UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MURIEL VAN HORN AND
MARK VAN HORN

CIVIL ACTION

VERSUS

NO. 17-12969

CHUBB INSURANCE COMPANY, ET AL.

SECTION "R" (3)

# ORDER AND REASONS

Before the Court is defendants' partial motion to dismiss.[1] For the following reasons, the motion is denied.

## I. BACKGROUND

This case arises out of a boat accident on Lake Pontchartrain.[2] Plaintiff Muriel Van Horn served as a volunteer race official for a sailing regatta held on the lake.[3] On November 26, 2016, Ms. Van Horn boarded a boat operated by Defendant David Rubin to be transported to her official's position.[4] According to the complaint, Rubin suddenly accelerated the vessel over the swells of Lake Pontchartrain, causing the boat to leave the water's surface, assume a nearly vertical position in the air, and slam back down onto the

---

[1] R. Doc. 18.
[2] R. Doc. 1.
[3] R. Doc. 35 at 2 ¶¶ 2-3.
[4] *Id.* at 3 ¶ 7.

water.⁵  This incident allegedly caused Ms. Van Horn to fracture her right tibial plateau, requiring major surgery and continuing medical care.⁶

On November 21, 2017, Ms. Van Horn and her husband Mark Van Horn sued for damages under general maritime law and under Louisiana law in supplement to general maritime law.⁷  Ms. Van Horn alleges that her injuries were caused by Rubin's negligence and by the negligence of the regatta organizers, the United States Optimist Dinghy Association, Inc. (USODA) and the Southern Yacht Club (SYC).⁸  Mr. Van Horn asserts a claim for loss of consortium and society as a result of Ms. Van Horn's injuries.⁹ Defendants Progressive Security Insurance Company, Chubb Insurance Company, and Federal Insurance Company allegedly provided liability insurance to Rubin, USODA, and SYC, respectively.¹⁰  Progressive now moves to dismiss Mr. Van Horn's claim for loss of consortium and society.¹¹

---

⁵ *Id.* at 3 ¶¶ 8-9.
⁶ *Id.* at 3 ¶ 9.
⁷ R. Doc. 1.
⁸ R. Doc. 35 at 4-6.
⁹ *Id.* at 9 ¶ 36.
¹⁰ *Id.* at 7-8.
¹¹ R. Doc. 18.  After this motion was filed, plaintiffs filed an amended complaint.  *See* R. Doc. 35.  The changes made by the amended complaint are not relevant to the legal issue addressed by the motion to dismiss.  The Court thus considers the motion to dismiss as addressed to the amended complaint.  *See* 6 Wright & Miller, *Federal Practice and Procedure* § 1476 (3d. ed. 2017).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Iqbal*, 556 U.S. at 678. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. The claim must be dismissed if there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is

apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## III. DISCUSSION

Progressive argues that Mr. Van Horn's claim must be dismissed because damages for loss of consortium are not available under the general maritime law in personal injury cases.[12] Plaintiffs acknowledge that the family members of Jones Act seamen cannot recover for loss of consortium.[13] But plaintiffs contend that such damages are available to the spouse of a nonseafarer injured in territorial waters when authorized by state law.[14] Plaintiffs rely primarily on the Supreme Court's decision in *Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199 (1996).

The Supreme Court in *Yamaha* held that federal maritime law does not displace state law remedies for the deaths of nonseafarers in territorial waters. *Id.* at 215-16. The *Yamaha* plaintiffs sought state law remedies, including damages for loss of society, after their daughter was killed in a jet ski accident. *Id.* at 202-03. It is undisputed that Ms. Van Horn is a nonseafarer who was injured in Louisiana's territorial waters. Louisiana law

---

[12] R. Doc. 18-1 at 2.
[13] R. Doc. 20 at 3.
[14] *Id.* at 2-3.

4

permits the spouse of an injured person to recover damages for loss of consortium. *See* La. Civ. Code art. 2315; *see also Kelly v. Bass Enters. Prod. Co.*, 17 F. Supp. 2d 591, 598 (E.D. La. 1998). Progressive nevertheless argues that *Yamaha* is inapplicable because Mr. Van Horn's loss of consortium claim is based on personal injury rather than wrongful death.[15] But the reasoning of the *Yamaha* opinion is not limited to wrongful death actions.

In *Yamaha*, the Supreme Court explained that variations in state remedies for wrongful deaths in territorial waters "had long been deemed compatible with federal maritime interests." 516 U.S. at 211. The Supreme Court thus rejected the argument that the creation of a federal maritime cause of action for wrongful death in 1970 ousted state law remedies. *Id.* at 209-11; *see also Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 409 (1970) (holding that a cause of action exists under general maritime law for death caused by violation of maritime duties). The *Yamaha* Court explained that, although *Moragne* sought to promote uniformity in the bases of liability in maritime law, the decision was not motivated by concern over more generous state remedies for wrongful death. 516 U.S. at 211. The Supreme Court noted that it had used similar reasoning to find that a state may apply its workers' compensation scheme to land-based injuries covered by the

---

[15] R. Doc. 27 at 2.

5

Longshore and Harbor Worker's Compensation Act (LHWCA). *Id.* at 214-15; *see also Sun Ship, Inc. v. Penn.*, 447 U.S. 715, 724 (1980) (finding that more generous state remedial schemes would not conflict with the purpose of the LHWCA).

If the application of state law remedies for wrongful deaths within territorial waters is compatible with federal maritime interests, the Court perceives no basis to find a conflict between maritime law and state remedies for personal injuries within territorial waters. *See Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1485 (5th Cir. 1992) (explaining that state law remedies that do not interfere with federal statutory or maritime law "may be enforced, even by invoking the admiralty jurisdiction of the federal courts"); *see also* Thomas J. Schoenbaum, 1 *Admiralty and Maritime Law* § 4-2 (5th ed. 2017); 14A Wright & Miller, *Federal Practice and Procedure* § 3672 (4th ed. 2017). Congress has not created a comprehensive tort recovery regime applicable to the personal injuries of nonseafarers in territorial waters. *See Yamaha*, 516 U.S. at 215; *cf. Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (holding that the Jones Act precludes recovery for loss of society damages for the wrongful death of a seaman).

Moreover, the Supreme Court has repeatedly sought to eliminate anomalies between wrongful death and personal injury actions created by

the uneven development of maritime law. *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 816 (2001) (explaining that it would be anomalous if, "[o]f two victims injured at the same instant in the same location by the same negligence, only one would be covered by federal law, provided only that the other died of his injuries"); *Moragne*, 398 U.S. at 395 (noting the incongruity that identical violations of federal law produce liability if the victim is injured, but not if the victim is killed).

With regard to loss of consortium damages, the Supreme Court and the Fifth Circuit have applied the same rules to wrongful death and personal injury cases. In *Sea-Land Servs. v. Gaudet*, 414 U.S. 573 (1974), the Supreme Court held that loss of consortium damages are available under general maritime law for the wrongful death of a longshoreman. *Id.* at 587-88. The Court later concluded that loss of society damages are also available for the personal injury of a longshoreman. *See Am. Export Lines, Inc. v. Alvez,* 446 U.S. 274, 281 (1980). The *Alvez* plurality explained that there is "no apparent reason to differentiate between fatal and nonfatal injuries in authorizing the recovery of damages for loss of society" under general federal maritime law. *Id.* at 281; *see also id.* at 286 (Powell, J., concurring) (finding "no rational basis for drawing a distinction between fatal and nonfatal injuries"). Similarly, after the Supreme Court held that loss of consortium damages are

not available for the wrongful death of a Jones Act seaman, the Fifth Circuit held that such damages are also precluded for the personal injury of a seaman. *See Michel v. Total Transp., Inc.*, 957 F.2d 186, 191 (5th Cir. 1992).

In arguing that wrongful death and personal injury actions are subject to different remedial schemes, Progressive relies on the Eleventh Circuit's decision in *In re Amtrak "Sunset Limited" Train Crash*, 121 F.3d 1421 (11th Cir. 1997).[16] The Eleventh Circuit held that *Yamaha* does not extend to personal injury actions because state wrongful death actions have a distinct historical basis in admiralty. *Id.* at 1428. No general maritime cause of action for wrongful death existed before 1970, and admiralty courts thus looked to state law to provide a remedy for the deaths of non-seamen in territorial waters. *Id.* By contrast, the general maritime law has long recognized a personal injury cause of action, and admiralty courts had no need to rely on state law for remedies in such cases. *Id.* at 1429. Although this argument has some force, the Court is not persuaded that the Supreme Court in *Yamaha* endorsed a new incongruity between the remedies available for personal injuries and wrongful deaths in territorial waters.

Given the absence of conflict between state remedies and federal law, and the clear trend toward consistent treatment of maritime personal injury

---

16     R. Doc. 27 at 2-3.

8

and wrongful death actions, the Court finds that *Yamaha* is applicable to personal injuries within territorial waters. *See Liner v. Dravo Basic Materials Co.*, No. 00-1908, 2000 WL 1693678, at *2 (E.D. La. 2000) (finding that "[n]othing in the language of the *Yamaha* decision suggests that [a distinction between death and injury] should be of any relevance"); *Kelly*, 17 F. Supp. 2d at 599 ("Neither logic nor maritime history supports restricting *Yamaha* to only fatal injury claims.").

Accordingly, Louisiana law governing loss of consortium damages may supplement general maritime law with regard to personal injuries of nonseafarers in territorial waters. This conclusion accords with recent federal district court decisions in Louisiana. *See Felarise v. Cheramie Marine, LLC*, No. 09-6355, 2010 WL 375229, at *2-3 (E.D. La. 2010); *In re Plaquemine Towing Corp.*, 190 F. Supp. 2d 889, 893 (M.D. La. 2002); *Liner*, 2000 WL 1693678, at *2; *see also* Schoenbaum at § 5-17 (explaining that the prevailing view after *Yamaha* "is that loss of society/consortium damages are available in admiralty for deaths or injuries in territorial or state waters under state law"). The motion to dismiss is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is DENIED.

New Orleans, Louisiana, this __3rd__ day of April, 2018.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE